IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

JOHNNY REDFERN,                    }
TDCJ-CID NO.907204,                }
                Plaintiff,          }
v.                                  }              CIVIL ACTION G-05-457
DOMINGO A. CARILLO, *et al.*,       }
                Defendants.         }

OPINION ON DISMISSAL

Plaintiff Johnny Redfern, a state inmate, has filed a complaint pursuant to 42 U.S.C. § 1983, alleging that TDCJ officials changed his work assignment from the laundry to the hoe squad without cause and allowed selected inmates to supervise him and other inmates. (Docket Entries No.1, No.23). Defendants Domingo Carrillo, Scott Green, and Johnny Thomas II, have filed a motion to dismiss, which the Court has construed as a motion for summary judgment. (Docket Entries No.35, No.36). Plaintiff has filed a response to the motion. (Docket Entry No.38). For the reasons to follow, the Court will grant defendants' motion for summary judgment and deny plaintiff relief.

CLAIMS

Plaintiff alleges that the following events gave rise to the pending civil rights complaint: On or about April 28, 2005, Lt. Green re-assigned plaintiff and nine other inmate-laundry workers to the field force.[1] (Docket Entry No.1, page 2). Around 6:30 a.m. on June 20, 2005, Lt. Green called out the hoe, garden, and medical squads to work in his "punishment crew," picking squash. (Docket Entry No.1, pages 3, 6). Around 9:15 a.m., the punishment

---

[1] Plaintiff indicates that he was later re-assigned to the kitchen in April or May, 2006. (Docket Entry No.23, page 2).

1

crew and the garden squad performed a work-detail called flat-weeding.  (*Id.*, page 6).  The job was supervised by two inmates chosen by field force officers under Lt. Green's direct supervision.  (Docket Entries No.1, page 6, No.23, page 2).  These inmates were referred to as the "lead-row" and "tail-row" by their position in the line, and they set the work-pace by calling out a four-step count.  (Docket Entry No.6, page 6).  Plaintiff and the other inmates were lined shoulder to shoulder in the row, where they chopped weeds and grass three to four feet high that was contaminated with insecticides, pesticides, or herbicides.  (*Id.*).  The supervising inmates ordered the inmates "to look where 'your' Lead-Row/Tail-Row is at, Do not go Pass us."  (*Id.*).  These inmate "bosses" also threatened the inmates "to 'get your sh--, and don't leave nothing."  (*Id.*).

On August 11, 2005, Officer Johnny M. Thomas assigned inmate "bosses" as lead-row and tail-row and told complaining inmates that he did not care about the law; he threatened to give a disciplinary case to any inmate that did not stay in line or work at the pace set.  (Docket Entry No.1, page 4).

Plaintiff claims the sudden assignment to the fields, absent disciplinary infractions, violated his liberty interest in his job classification, which implicates the Due Process Clause of the Fourteenth Amendment.  (*Id.*, page 7).  He claims that the use of the lead-row/tail-row line squad is unconstitutional under *Ruiz v. Estelle*, 679 F.2d 1115, 1176 (5th Cir. 1982), *amended in part, vacated in part, on other grounds*, 668 F.2d 266 (5th Cir. 1982), because it allows certain inmates to issue orders or instructions to another and to be responsible for reporting the pace or quality of another inmate's work.  (Docket Entry No.1, page 7).  Plaintiff also complains that the practice violates Administrative Directive 03.02 because the practice gives selected inmates supervisory authority over other inmates.  (*Id.*, pages 3, 5).

2

Plaintiff seeks a declaration that defendants' actions have violated his rights.  (*Id.*, pages 8-9).  He also seeks a preliminary and permanent injunction to stop the lead-row/tail-row practice and to allow inmates to work at their own pace and within their medical and age restrictions.  (*Id.*, page 9).  He further seeks compensatory and punitive damages.  (*Id.*).

Defendants contend that plaintiff has failed to state a claim upon which relief may be granted because (1) plaintiff does not have a liberty interest in a specific work assignment; (2) defendant Carrillo was not personally involved in the acts of which plaintiff complains; and (3) they are entitled to Eleventh Amendment immunity and qualified immunity.  (Docket Entry No.35).  Defendants also seek a dismissal on grounds that plaintiff lacks standing to assert a claim with respect to any violation of the administrative order or his work assignment.  (*Id.*).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v.Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).   A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

#### Eleventh Amendment Immunity

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).   Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.  *Edelman v. Jordan,* 415 U.S. 651, 663 (1974).  Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993).  This bar remains in effect when state officials are sued for damages in their official capacity.  *Cory v. White,* 457 U.S. 85, 89 (1982).

4

All defendants in this case are employees of the State of Texas or state agencies; therefore, plaintiff's claims seeking monetary damages against all defendants in their official capacities are barred by the Eleventh Amendment.  *See Will v. Michigan Dept of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002).  Accordingly, defendants are entitled to summary judgment on this ground.

## B. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).  In assessing the applicability of a qualified immunity defense, the court considers "whether plaintiff's allegations, if true, establish a constitutional violation" and whether defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002).  Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry.  *Id.* at 323.

Defendants contend that they did not violate the Due Process Clause by changing plaintiff's work assignment because plaintiff does not have a liberty interest in a specific work

5

assignment. (Docket Entry No.35). A transfer from a desirable job to an onerous job in the prison system does not state a substantive due process claim because an inmate has no liberty interest in his job classification. *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989); *see e.g. Taylor v. Carlize*, 172 Fed. Appx. 589, 591 (5th Cir. 2006) (finding complaint of reclassification as a field worker to lack merit because inmate "does not have a liberty interest in his work . . . assignment"). Moreover, plaintiff's attachments show that he was not denied the opportunity to be heard with respect to the change in job assignment.[2] *See Matthews v. Eldridge* 424 U.S. 319, 333 (1976) (noting that due process requires, at a minimum, the opportunity to be heard at a meaningful time and in a meaningful manner).

Defendants also contend that plaintiff is not entitled to compensatory damages with respect to any Eighth Amendment claim because he has not shown that he suffered a physical injury and alternatively, more than a *de minimis* injury from the work assignment or the practice of designating inmates to start a "work-pace count." (Docket Entry No.35). Federal law holds that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of a physical injury." 42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (holding that "[s]ection 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury"). Plaintiff does not claim that he suffered a physical injury from the alleged "lead-row/tail-row" practice; therefore, he fails to show that he is entitled to compensatory damages with respect to such claim.

---

[2] Plaintiff complained of the new job assignment on the very day the assignment was changed in Step 1 Grievance No.2005150872. (Docket Entry No.1., page 16).

Plaintiff complains that the field work that he was required to perform caused him to suffer knee and foot pain.  (Docket Entry No.23).  "[P]rison work requirements which compel inmates to perform physical labor which is beyond their strength, endangers their lives, or causes undue pain constitutes cruel and unusual punishment."  *Howard v. King,* 707 F.2d 215, 219 (5th Cir. 1983).  If a prison official knowingly assigns an inmate to a job he or she realizes may significantly aggravate a serious physical ailment, then such a decision would constitute deliberate indifference to serious medical needs that may violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *Jackson*, 864 F.2d at 1246; *see also Calhoun v. Hargrove*, 312 F.3d 730, 734-35 (5th Cir. 2002) (finding claim sufficient to survive a motion to dismiss where prison official purportedly knew about a four hour medical work restriction but forced inmate to work long hours, which raised blood pressure to dangerously high levels).  A negligent assignment to work that is beyond the prisoner's physical abilities, however, is not unconstitutional.  *Jackson*, 864 F.2d at 1246.  Moreover, a mere disagreement about a work assignment does not amount to deliberate indifference.  *See e.g. Douglas v. McCasland*, 194 Fed. Appx. 192 (5th Cir. 2006) (finding claim frivolous where plaintiff fails to show that defendants knowingly assigned him work that would significantly aggravate his medical condition); *Freeman v. Alford*, 48 F.3d 530 (5th Cir. 1995) (not designated for publication).  Moreover, to succeed on a civil rights claim, plaintiff must show that his job assignment significantly aggravated a serious physical ailment.  *Jackson*, 864 F.2d at 1246-47.

Plaintiff indicated in Step 1 Grievance No.2005150872, dated May 4, 2005, that he should be in the medical squad or the building utility squad because he had a chronic bone condition in his left knee that required surgery.  (*Id*., page 17).  He did not indicate in the grievance that the condition was significantly aggravated as a result of the new job assignment.

(*Id.*).  In response, Warden Trinci stated that plaintiff had been "inappropriately assigned to work in Hoe Squad #3. . . . Your work restrictions of no walking over 800 yards and no squatting are compatible with assignment to Garden Squad #2.  If you do not feel your restrictions do not adequately represent your current physical abilities, submit a sick call request for evaluation." (*Id.*).  Defendants' summary judgment proof shows that plaintiff was assigned to the hoe squad for one day and then re-assigned to the garden squad the next day in accordance with his medical restrictions.[3]  (Docket Entry No.35-2, pages 2, 3).

Although he does not expressly voice a complaint about the reassignment to the garden squad, plaintiff implicitly complains about the same because he was still required to work in the field and perform the same work with a few exceptions.  Plaintiff alleges that as a result of the field work, he now has a knee injury, which causes his knee to slip out-of-place and forces him to push it back in place or fall down; he also claims that he now has bone spurs in both heels that cause him to be in pain at all times.  (Docket Entry No.23, page 1).  Plaintiff does not claim that on any given date, he sought or received medical treatment for any specific complaint with respect to his knee or feet as a result of the new job assignment, although he states that his knee was x-rayed on February 3rd and he was started on medication and pain relievers.  (*Id.*, page 2). However, in Step 1 Grievance No. 2005179428, dated June 17, 2005, plaintiff stated that he told Officer Scott Thomas[4] that he wanted to be assigned to medical because his left knee and foot were hurting from walking across the field and working in places such as a gulley or the hog tank that required him to climb up and down.  (*Id.*, page 6).  Plaintiff noted that after he complained to the officer, he was required to work in a dry creek bed, where he had to climb up and down the

---

[3] Plaintiff states that his current restrictions are "no walking over 750 yards, no squatting, ground floor/bottom bunk restricted."  (Docket Entry No.23, page 2).

[4] Officer Scott Thomas is not a named defendant in this suit.

8

side of the creek bed.  (*Id.*).  Plaintiff further complained in the grievance that he had requested medical treatment two or three times while working in the fields and had not been taken to the infirmary.  (*Id*.).  He indicated that he had waited outside the infirmary several times but no medical help came; therefore, he has been forced to live with the pain.  (*Id*.).  Warden Bell responded that the medical department indicated that plaintiff must take his medication as prescribed, that an x-ray was not medically indicated, and that his current medical restriction was appropriate.  (Id.).

Plaintiff also attached to his more definite statement a copy of a Nursing Assessment Protocol for Musculosketal Symptoms ("Assessment"), dated October 15, 2003. The Assessment noted that plaintiff had been in a motorcycle wreck in 1998.  The Assessment also noted that plaintiff had complained of leg and back pain when he stood for more than thirty to forty minutes, but that he did not have any observable muscular or joint abnormalities or injuries..  (*Id*., page 10).

The Court, however, need not determine whether plaintiff sustained a physical injury that significantly aggravated plaintiff's pre-existing knee and foot conditions as a result of his assignment to the field force squads because neither plaintiff's pleadings nor the record reflect that prison officials consciously assigned plaintiff to the field force with knowledge that such job would significantly aggravate his knee and foot problems.  The record shows that plaintiff was assigned to the hoe squad for one day and then re-assigned to the garden squad the next day because of his medical restrictions.  The record also shows that the garden squad assignment complied with plaintiff's medical restrictions.  Plaintiff does not indicate that defendants forced him to perform work that violated such restrictions while working on the

garden squad or that they had knowledge that his medical restrictions did not adequately reflect the extent of his physical condition.

Plaintiff's pleadings further fail to show that defendants' conduct was egregious or reprehensible so as to warrant punitive damages. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Accordingly, he fails to show that defendants violated his Eighth Amendment rights by his assignment to the field force that would entitle him to compensatory or punitive damages.

Plaintiff also alleges that defendant Major Domingo Carrillo was responsible for his assignment to the hoe and garden squad because Carrillo serves as a member of the board that assigns jobs to inmates. (Docket Entry No.23). Plaintiff, however, fails to show that Carrillo was personally involved in assigning him to a job that violated plaintiff's constitutional rights or federal law or that he implemented an unconstitutional policy by which plaintiff was so assigned. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Each defendant must either actively participate in the acts complained of or implement unconstitutional policies that result in injury. *Mouille v. City of Live Oak, Texas*, 977 F.2d 924, 929 (5th Cir. 1992). Liability based on one's supervisory capacity exists if the supervisor is personally involved in the constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Accordingly, plaintiff's claims against defendant Carrillo will be dismissed.

### C. Equitable Relief

Plaintiff also seeks both declaratory and injunctive relief on his claims. (Docket Entry No.1). The prohibitive feature of § 1997e(e), requiring physical injury before recovery,

10

does not apply in the context of requests for declaratory or injunctive relief sought to end an allegedly unconstitutional condition of confinement. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). Plaintiff, nevertheless, has failed to show the existence of a material fact issue regarding his claim that his job assignment violated his rights under Eighth and Fourteenth Amendments. Likewise, he fails to show that the use of field service workers[5] violated the Constitution or federal law, including the Amended Decree stated in *Ruiz v. Estelle*, 679 F.2d 1115, 1176 (5th Cir. 1982), *amended in part, vacated in part, on other grounds*, 668 F.2d 266 (5th Cir. 1982).[6]

Section III of the 1992 Final Judgment issued by the *Ruiz* Court enjoined TDCJ-CID as follows, in pertinent part: "No prisoner shall be permitted to exercise authority over another prisoner, to supervise another prisoner, to convey orders or instructions from TDCJ-ID employees to another prisoner, to discipline another prisoner, to count or assist in counting other prisoners." *Ruiz v. Johnson*, 154 F.Supp.2d 975, 989 (S.D. Tex. 2001). The *Ruiz* Court terminated this provision because it found no ongoing constitutional violations. *Id.* at 990. The

---

[5] A field service worker is an inmate who has been assigned to agricultural work in a support capacity. *Ruiz v. Estelle*, 679 F.2d 1115, 1174 (5th Cir. 1982), *amended in part, vacated in part, on other grounds*, 668 F.2d 266 (5th Cir. 1982).

[6] Although the *Ruiz* Court prohibited the exercise of supervisory or administrative authority by inmates over another inmate, it authorized an inmate under the direct supervision of a staff member to do the following, in pertinent part:

> (1) Act as a starting point for the work squad;
>
> (2) Act as last man in the work squad, counting off rows or distances; and
>
> (3) Work at the pace set by a staff member;
>
> provided, however, that no Field Service Worker may issue any order or instruction to another inmate or be responsible for reporting the pace or quality of another inmate's work.

*Id.* at 1176.

*Ruiz* case is now closed and plaintiff has not shown that the final judgment was improper or that this Court can grant relief on this claim under *Ruiz*.

Moreover, plaintiff's complaint that the use of field service workers violates TDCJ-CID is not actionable under § 1983. "A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Plaintiff's complaints do not give rise to constitutional violations; therefore, he is not entitled to declaratory or injunctive relief.

<u>CONCLUSION</u>

Finding no violation of any federal constitutional right or federal statute in plaintiff's pleadings, the Court ENTERS the following ORDERS:

1.  Defendants' motion for summary judgment (Docket Entry No.35) is GRANTED. All claims against all defendants are DENIED and this complaint is DISMISSED WITH PREJUDICE.

2.  All pending motions, if any, are DENIED.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 18th day of February, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

12